## Hawk v. Trumbull Construction Company, Appellant.

Argued October 3, 1960. Before JONES, C. J., MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused December 13, 1960.

*James J. Burns, Jr.,* with him *Burns & Manley,* for appellant.

*Harold R. Schmidt,* with him *John L. Laubach, Jr.,* and *Rose, Houston, Cooper and Schmidt,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 15, 1960:

Ardmore Boulevard is an impressive six-lane thoroughfare which passes through Forest Hills in Allegheny County where the accident, which is the subject of this lawsuit, occurred. Three of the lanes are used

exclusively for westbound traffic, three for eastbound traffic. The westbound and eastbound lanes are separated by a car track, so that, in effect, the boulevard really constitutes two separate highways. In August, 1954, the Trumbull Construction Company, under contract with the State Highway Department, was making repairs on certain stretches of this boulevard.

In order that the work should proceed expeditiously and efficiently, and with the least inconvenience possible to the public, the designers of the job planned that while the eastbound highway was under repair, all traffic would be diverted to the westbound highway. It was agreed between the State and the construction company that, in the interests of safety, only two lanes would be used on the westbound highway—one for traffic moving eastwardly and one for traffic moving westwardly, the inner lane to remain free. Obviously, it was absolutely imperative that, with so drastic a change in the highway directions, motorists should be notified of what was taking place so that no one would attempt to enter the eastbound highway (now being repaired) or that no one travelling westwardly on the westbound highway should move over to the south lane of that highway which, of course, was to be committed to eastbound traffic exclusively.

On August 17, 1954, Doyle E. Hawk, travelling in a Dodge Sedan, entered the westbound highway at a point known as Electric Avenue and proceeded to drive westwardly on that highway as he had done for years in the past, utterly unaware (as the evidence was to demonstrate) that this highway was now being used *also* for eastbound traffic. With the confidence of habit and the comfort of visual assurance that all was well, since other cars were proceeding in the same westbound direction, he continued to move westwardly in the middle lane at a speed of thirty or thirty-five miles

per hour. Two cars were preceding him, one occupying the middle lane directly ahead, and another still further ahead but in the lane to his right. Hawk was on his way to pick up some automobile tires at a Kotziers Garage located at the corner of Ardmore Boulevard and Kenmore Avenue, facing the Boulevard on the south or left side as one proceeded west on Ardmore. Thus, Hawk began to leave the middle lane and move toward the left so as to be on the proper side when he should reach his destination—the Kotziers Garage. But as he got into the left lane, he was suddenly confronted with a beer truck moving in the same lane—in the opposite direction. In the unavoidable head-on crash which immediately ensued, Hawk was killed.

The administratrix of his estate brought wrongful death and survival actions against the Trumbull Construction Company and was awarded by the jury in the court below verdicts in the sums of $51,503.43 and $1,996.57. The defendant construction company has appealed, asking for judgment n.o.v., arguing that the deceased was guilty of contributory negligence as a matter of law and that, in any event, the failure of the construction company to erect suitable warning signs about the change in the direction of traffic, was not the proximate cause of the accident.

Reading the record in the light most favorable to the verdict winner, we conclude that neither position has merit.

The failure of a road construction company to erect suitable warning signs and barriers to acquaint the travelling public with a change of direction in the road it is repairing is prima facie evidence of negligence. The defendant argues that despite the absence of warning signs the decedent Hawk could have avoided the accident which killed him, had he been vigilant. Spe-

cifically, the defendant maintains that by exercising due care Hawk could have seen the eastbound beer truck, being driven by a Russell Silvio, before he, Hawk, passed over into the left lane.

We have said that Hawk was being preceded by two cars, one in the middle lane and the other to the right, but still ahead. The bodies of these cars somewhat screened Hawk's view of what was immediately ahead and directly ahead to the right. This in itself might not have been enough to shut off his view of what was proceeding eastwardly on the highway, but it so happens that slightly beyond the point of the collision, still looking westwardly, the boulevard curves around a cliff to the right, so that a vehicle travelling eastwardly on that curve is somewhat concealed from view until it bursts into view on the straightaway. Thus, this fortuitous sweep in the road, together with the topographical elevation, together with the two vehicles preceding Hawk, all conspired to effectually hide the unexpected oncoming traffic from Hawk's view until it was too late for him to stop or change direction to avoid the Silvio truck which had tragically stolen into the scene.

Had Hawk known of the possibility of eastbound traffic on this years-known westbound thoroughfare, the defendant might, with some show of logic, argue that Hawk contributed to his own disaster by moving into the lane accommodating traffic moving in a direction opposite to his own. But a person who, because of a change in traffic direction of which he is not aware, is confronted with physical conditions which limit the scope of his inquiring vision, cannot be declared guilty of contributory negligence, as a matter of law.

In further support of its proposition that Hawk could have seen the Silvio truck before the collision,

the appellant points out that the driver of the vehicle preceding Hawk in the right lane (Mr. Spontak) could, by means of his rear mirror, see Hawk's car travelling behind another car in the center lane before Silvio's truck passed Spontak's vehicle. It is difficult to see how this establishes anything. Indeed, why it is even presented as argument. What Spontak saw in his rear mirror looking in one direction toward a panorama and people all its own can scarcely be equated with what one may see looking in a completely different direction with different scenery, different dramatis personae, and different action. Moreover, the jury made a special finding on this very subject. It was asked: "Could the decedent, Mr. Hawk, have seen the truck driven by Mr. Silvio at any time prior to the time when he, Mr. Hawk, pulled out to his left to pass the automobile preceding him?" The answer was a categorical "No."

On the question of proximate cause the defendant says in its brief: "Even admitting for the purposes of argument, that the defendant did not place proper warning signs, and was in fact negligent, such negligence was not the proximate cause of this accident . . . Any negligence of the defendant, in not posting the highway, would be superseded by the decedent's failure to observe that which is obvious and the accident resulted solely from decedent's failure to exercise the due care required of him whether or not this particular highway was one way or two way on the date of the accident."

But this is simply re-arguing the matter of contributory negligence. Assuming that there was evidence to support the defendant's theory of decedent's contributory negligence, there certainly was equally formidable evidence which showed that he was free of contributory negligence, and then there is the pre-

sumption that the decedent used due care. The question of contributory negligence (and equally that of proximate cause) was therefore a question of fact for the jury. The jury has spoken. There is nothing in the record to suggest that the jury spoke from an incorrect text.

The proximate cause of this tragic accident was the inexcusable fault of the defendant in not proclaiming its activities on Ardmore Boulevard. When it failed to place barriers and post suitable warning signs to notify the travelling public as to what it was doing on this rapidly moving thoroughfare, it in effect invited ambulances and hearses to patrol the highway because nothing could more surely guarantee smash-ups than cars in opposing directions occupying the same strip of pavement. If the defendant had cut away the boulevard at the end of a curve and at the edge of a precipice, its liability could not have been clearer.

Judgment affirmed.

Mr. Justice BENJAMIN R. JONES dissents.