421 A.2d 326

John A. DIETTERLE and Arlene P. Dietterle, Husband and wife, and John P. Dietterle, a minor, by his parents and natural guardians, John A. Dietterle and Arlene P. Dietterle, in their own right

v.

James F. HARDING, and James D. Morrissey, Inc., and Bensalem Township, two cases.

Appeal of BENSALEM TOWNSHIP.

Appeal of JAMES D. MORRISSEY, INC.

Superior Court of Pennsylvania.

Argued June 21, 1979.

Filed Aug. 8, 1980.

Petition for Allowance of Appeal Denied Nov. 14, 1980.

532

James D. Wilder, Philadelphia, for Bensalem Tp.

G. Taylor Tunstall, Philadelphia, for Dietterle, appellees.

Joseph M. Hankins, Philadelphia, for Harding, appellee.

William J. McKinley Jr., Philadelphia, for Morrissey.

Before HESTER, HOFFMAN and CATANIA, JJ.*

CATANIA, Judge:

This is an appeal from a verdict entered in favor of plaintiffs and defendant James F. Harding, and against

* President Judge FRANCIS J. CATANIA, of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

defendants James D. Morrissey, Inc., and Bensalem Township.

This case arose out of an automobile accident on the evening of January 4, 1970 involving the appellant, Harding, and the appellees on Street Road in Bensalem Township, Bucks County.

At the point of collision, the highway narrowed from a new four–lane structure, to an older two–lane road with a sharp left turn required to be made at that juncture. At that point in the road, there was an earthen embankment, which the Harding car collided with before striking the Dietterle car.

Appellant Morrissey had contracted with the Pennsylvania Department of Transportation to construct approximately 4392 linear feet of separated highway consisting of reinforced cement concrete pavement 24 feet wide on each side of a paved median 4 feet, 19 feet and variable in width including one composite steel multi–girder bridge superstructure; also one prestressed concrete bridge having a total overall length of 82 feet and 858 linear feet of highway. The project covered approximately one mile in length and covered the cost for the maintenance and safety of traffic approaching and throughout the construction site.

Prior to submitting its bid on the contract, Morrissey warranted to the Department of Transportation that they had examined the entire project area and were fully aware of the conditions to be encountered. Additionally, they further represented that they had read and were completely familiar and understood thoroughly the "General Conditions, Specifications of the Department of Highways, Forms 408 and 409, contained in and governing the performance of the contract". Consequently, Appellant Morrissey knew of the dangerous condition of the embankment, which completely blocked the two–southern most lanes of traffic, and a part of their performance consisted in removing the embankment and constructing the highway. Morrissey argues that it should not be liable for an accident that resulted due to a pre–existing defect in the highway, that was not within the

immediate work area, and the negligence of the Appellee Harding for not having observed the embankment.

■ Appellant Morrissey cites *McClendon et al. v. T. L. James and Company*, 231 F.2d 802 (1956), where a contractor was not liable for an accident that resulted when an automobile heading west struck a broken piece of cement in the highway, that contractors were repairing, and lost control and hit an automobile heading in an easterly direction. In that case, the defect in the road was six miles from the actual work site and the Court determined that the contract imposed no duty upon contractor to warn motorists of the defect. However, in the instant case, the facts are quite distinguishable. Not only was the defect within one mile from the actual work area, as opposed to six in the *McClendon Case*, but the earthen embankment was to be removed as part of their contract. Further, appellant's administrator testified at trial that although he was aware of Bulletin # 43 that concerns warning the public about construction by adequate advance warning devices and by suitable lighting devices at night, the Company took neither of these precautionary measures. In *Hawk v. Trumbull Construction Company*, 401 Pa. 570, 166 A.2d 41, it was held that road construction companies should give motorists adequate and proper warning of the existence of dangerous conditions within their project area, particularly when the project area covers such a limited area as the one in question. Consequently, the lower court was correct in its finding of negligence concerning appellants' admitted failure to erect warning and channelling devices for traffic moving easterly into the construction area.

■ The lower court erred in finding Bensalem Township jointly liable. It is undisputed that Street Road, at the time and place of the accident, was designated a state highway under Section 2 of the Act of June 22, 1931, P.L. 720, 36 PS § 103. The exclusive authority and jurisdiction of state highways concerning maintenance and repair rests with the State Highway Department, also known as the Pennsylvania Department of Transportation (PennDOT). It was their

duty, and not Bensalem Township's, to erect fences, saw–horses, and the barrels in question. Even though Bensalem Township police issued traffic citations and investigated accidents on Street Road, as did the State Police, the Township had no right to locate or relocate the signs and devices which the State required Morrissey to provide.

In finding Bensalem Township jointly liable, the lower court determined that an intervening act by the Township on the night preceding the accident, took them from under the prophylactic shield that they claimed protected them. The intervening act occurred after a similar accident only twenty–four hours preceding the instant one. Bensalem Township was summoned to the scene of that accident and placed flares on the road so that the approaching vehicles would be able to avoid the danger area. The lower court reasoned that this act of placing the flares on the road was sufficiently an act of dominion and control of the area, that their subsequent removal of the flares after the accident was cleared up, amounted to an act of negligence in failing to maintain safe conditions, if only temporarily until Penn-DOT could alleviate the problem.

In *Stevens v. Reading Street Railway Company*, 384 Pa. 390, 121 A.2d 128 (1956), it was held that the Commonwealth has relieved the municipalities of the obligation to construct, repair or maintain state highways. According to this precedent, Bensalem Township owed no duty to motorists traveling on Street Road on the night of the accident. Under the most critical analysis of the facts the only negligence that could be attributed to Bensalem Township is that they were put on notice of the potential hazard of the area by the accident of January 3rd, and their failure to act immediately was the one contributing element to the Dietterle–Harding accident. However, even under such scrutiny, their liability is still only secondary to that of Morrissey who was under contract with the State to maintain safe conditions on Street Road. Therefore, Bensalem Township

is indemnified by Morrissey, and are consequently not liable for any damages assessed by the lower court.

■ The record supports the lower court's finding that the accident was not due to the negligent driving of Harding. The question of the visibility of the embankment, considering the lack of any warning of its existence, was a question of fact for the jury, whose finding shall not be disturbed absent the inability of two reasonable people to agree in the conclusion. *Cummings v. Nazareth Borough*, 427 Pa. 14, 233 A.2d 874 (1967). It was argued at trial by Appellant Morrissey that Harding violated the assured clear distance ahead rule, and was negligent as a matter of law. At night, this would be within the distance illuminated by the headlights. Obviously, if road conditions change, the driver must adjust his speed accordingly. However, where the change is so drastic as the earthen embankment in this case was, a driver need not be extraordinarily diligent or exercise superhuman sensory perception to comply with the rule. *Lathrop v. Henkels and McCoy, Inc.*, 351 F.Supp. 1052 (D.C.Pa.1972). It was brought out at trial that Harding was totally unfamiliar with the area; that there were no lights illuminating the area; that the barrels and barricades were on the opposite side of the dirt embankment from which Harding was approaching, and therefore not visible; that he was travelling 30 m.p.h., looking ahead and paying attention to where he was going; and, most importantly, that there were no signs or warnings of any kind alerting him to the existence of the embankment or warning him that it was necessary for him to change lanes ahead. Based on this information, it was entirely proper for the jury to conclude that Harding did not violate the assured clear distance rule, or that he failed to exercise all due care under the circumstances.

For the foregoing reasons, the verdict of the lower court is affirmed as to the liability of James D. Morrissey, Inc., and reversed concerning Bensalem Township.

HOFFMAN, J., concurs in result.