Mitchell *v.* Rochester Borough, Appellant.

Argued March 23, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

*Robert L. Orr*, with him *J. Frank Kelker*, and *Reed, Ewing, Orr & Reed*, for appellant.

*John D. Ray*, with him *James B. Ceris*, and *Ray, Good & Hudson*, for plaintiffs, appellees.

*John N. Sawyer*, with him *Moorhead, Marshall & Sawyer*, for additional defendant, appellee.

Opinion by Mr. Justice Musmanno, April 20, 1959:
Adams Street, a 40-foot wide thoroughfare in Rochester, accomplishes the unique feat, at the point involved in this litigation, of running upgrade and downgrade at the same time. This paradox is explained

by the fact that a strip 12 foot wide on the northern sides rises, by means of a ramp, to another thoroughfare called Rome Avenue, while the rest of the street proceeds downhill to an intersecting highway known as New Hampshire Avenue. The ramp, which lifts Adams Street to the elevation necessary to carry it to Rome Avenue, is supported by a concrete abutment which becomes a wall-like partition, severing the street into two parts.

At the bottom of the ramp, on November 27, 1955, a sheet of ice had formed. In the early morning of that day (2:30 o'clock), Mrs. Bertha Mitchell was driving her Mercury automobile westwardly when she hit the ice, skidded violently, and smashed into the front part of the concrete abutment. A few minutes later another car, driven by an Earl Klingseisen, skidded on the same patch of ice and crashed into the rear end of the crippled Mitchell car. A wrecker car, after being called, appeared on the scene to handle the two immobilized machines and while it was engaged in this operation, a fourth car came along and also hit the ice, skidding into the rear of the wrecker car. From this Artic merry-go-round, or vehicular Virginia reel, there emerged, not unnaturally, lawsuits.

Mrs. Mitchell and the passenger riding with her, Mrs. Margaret Vannauker, were injured in the collisions and they filed individual actions in trespass against the Borough of Rochester. The borough brought in as an additional defendant, a Grace Engle, the owner of a flower shop which abutted on Adams Street in the vicinity of the point where the glacial melee occurred.

It was the borough's contention that the water which had congealed on Adams Street had been improperly discharged on to the street from the Engle property.

The suits were consolidated for trial and verdicts were rendered in favor of the plaintiffs as against the borough. Grace Engle was exonerated of all liability by the jury. The Borough of Rochester appeals, seeking judgment n.o.v. or a new trial. The municipality argues that there can be no liability against it in a situation of this kind because: (1) there was no evidence that Adams Streets was defectively constructed, (2) there was no ice on any of the other streets in the town, and (3) the accumulation on Adams Street had not formed into hills and ridges of sufficient size to constitute a dangerous obstruction to traffic.

It is a mistaken idea that liability in ice and snow cases can only rest on hills, hillocks, ridges, and mounds. A glazed, mirror-smooth stretch of ice can be as hazardous to life and limb as a Siberia of icicles, snow piles, and frozen corrugations. Negligence is not determined by the shape of the perilous substance but by its capacity to lure reasonably cautious persons into disaster.

It is true that the coating of ice on Adams Street did not reflect a general condition through Rochester. Nor was the icy sheet of excessive proportions. Triangle in shape, it measured from zero to 20 feet in width and some 180 feet in length. But these restricted dimensions accentuated rather than diminished its dangerous potentialities because it became in effect a trap for those who had no reason to expect an Alaskan skating rink in the middle of a roadway during a period when winter was nowhere else to be seen.

The offending ice was not caused by a precipitation of the elements. There had been no snow or freezing rain that day or immediately before. The ice formed from waters which lay on the street because of defective drainage. Massachusetts Way and Flower Way, which run into Adams Street from the north,

pour all their rain and the water which emerges from downspouts on flanking buildings, into Adams Street, which at this point is not equipped with catch basin or releasing sewers. Thus, the waters entering Adams Street in this vicinity stay here—they have no other place to go. Resting on an impermeable surface they do not percolate through to lower levels and in November weather they do not evaporate. They simply lie dormant in pool-like innocuousness and stagnation until, as happened in this case, a drop in temperature welds them together into a formidable armor of ice.

The Borough of Rochester was well aware of this lurking peril. For a period of years police officers had reported the sleeping dragon in the middle of Adams Street. Only hours before the accident occurred police officer Wilhelm attempted to arouse the municipal authorities to their responsibilities on Adams Street. "Q. Now, had you made any report that night before the accident about this icy condition there? A. While I was on that tour of duty, on the 27th, yes, sir. Q. How much earlier on the same evening? A. To be precise and exact, I couldn't say; but it was an hour and a half, two hours. Q. In other words, you came down there an hour and a half, or two hours before that and saw this icy condition? A. Yes, sir. Q. And you reported it to the office,—A. Yes, sir. Q. —that it was a dangerous condition, or what? A. As we were riding along we noted the road, was dry, and noticed the patch of ice; and I said to my buddy, or he said to me, in the general conversation, that that was a bad situation, that somebody coming along there could have a bad wreck, and we had better call in for ashes; which we did. Q. When you got there and found the cars wrecked were there any ashes on that icy spot? A. No, sir."

Thus, the borough had constructive as well as actual notice of the situation which resulted in the accident which caused the lawsuits. The lower court properly said, in refusing judgment n.o.v. "The jury must have realized that the dangerous situation created by the Borough could have been corrected at very little expense by installing a catch basin near the ramp to carry away the water trapped by the Borough, which formed the fatal ice."

A municipality is required to construct and maintain its highways in such a manner as to protect travelers from dangers which, by the exercise of normal foresight, careful construction, and reasonable inspection, can be anticipated and avoided. It was a question for the jury whether the municipality had measured up to this responsibility, and we are satisfied from a study of the record that the verdicts reached by the jury were well supported by the evidence. In the case of *Decker v. Scranton City*, 151 Pa. 241, 243, this Court held that a municipality is liable in damages for injuries resulting from the failure of the municipality to construct and maintain suitable drains on a highway. "It was certainly its [the City of Scranton's] duty to construct and maintain suitable ditches and sluices to carry off the water which ordinarily flowed from springs and other sources outside and in the vicinity of the highway. It could not in violation of this duty allow such water to run along the centre of or over the road, until there was an accumulation of ice from it which rendered unsafe and obstructed travel thereon, without incurring liability to a party who in consequence thereof sustained an injury. A defective construction of the road in conjunction with such an accumulation of ice cast upon the municipality the duty of removing the obstruction on notice."

It is argued by the appellant borough that Adams Street was graded and constructed in accordance with standards which apply to all highways in the Common-wealth. This could be a question of fact but even if it were true this would not of itself relieve the borough of all liability if the particular circumstances in the case showed a failure on the part of the municipality to exercise due care to protect the travelling public. A street may be as perfectly graded as a golden boulevard in heaven but if an obstruction is allowed to remain on it to the peril of law-abiding wayfarers, the supervising authority is liable for resulting damages. The evidence in the case at bar almost justifies a finding that the slumbering waters on Adams Street constituted a nuisance which the municipality made no effort to abate.

The motion for judgment n.o.v. was properly refused in the court below.

Failing to obtain judgment n.o.v. the defendant borough asks for a new trial. In its original motion below, the borough enumerated 24 reasons for a new trial, practically all of them based on the Trial Judge's charge. The lower court, in its opinion, replied to each one of the appellant's arguments and demonstrated quite satisfactorily that none of the assigned reasons, or the aggregate of them, warranted the awarding of a new trial. In this Court the appellant enumerates a lesser number of reasons but those reasons are still predicated on alleged error and the inadequacy in the Trial Judge's instructions to the jury. A careful reading of the charge convinces us that the Trial Judge instructed the jury on the elements of negligence, proximate cause, and all issues involved in the case.

Nor do we believe, as the appellant contends, that the charge was "unduly favorable to the additional defendant." The Trial Judge briefly related the evidence

covering Miss Engle's alleged involvement in the cause of the accident and left it to the jury to decide if the facts warranted a verdict against her. The record demonstrates that the facts made her and her property innocent bystanders of the drama of the innocent waters which became ominous ice which threw the plaintiffs into a litigation which has now ended with justice to all; and the judgments in the court below are, therefore,

Affirmed.

Mr. Justice BENJAMIN R. JONES concurs in the result.