Tracy Lyn STARR

v.

Ottavio C. VENEZIANO, Frank J. Zottola Construction, Inc. and Commonwealth of Pennsylvania, Department of Transportation

v.

RICHLAND TOWNSHIP, Appellant.

Tracy Lyn STARR, Appellant,

v.

Ottavio C. VENEZIANO, Frank J. Zottola Construction, Inc., and Commonwealth of Pennsylvania, Department of Transportation

v.

RICHLAND TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 1997.

Decided Jan. 8, 1998.

Scott G. Dunlap, Philadelphia, for appellant, Richland Tp.

Alan H. Perer, Pittsburgh, for appellee, Tracy Starr.

Brian H. Baxter, Pittsburgh, for appellee, Dept. of Transp.

Before COLINS, President Judge, McGINLEY, J. (P.), and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Before the Court are cross-appeals filed by Richland Township (Township) and Tracy Lyn Starr (Starr) from the January 29, 1997 order of the Court of Common Pleas of Allegheny County (trial court) denying the Township's motion for post-trial relief and limiting delay damages.[1]  We affirm.

On May 20, 1993, Starr was attempting to complete a left turn from Sandy Hill Road, a Township-maintained road, onto Route 8, a four lane state highway, and was broadsided by a truck travelling northbound on Route 8. The truck was driven by Ottavio Veneziano in the course of his employment with Frank J. Zottola Construction, Inc. Starr, who was seriously injured in the collision, filed suit against Veneziano and Zottola and settled with those defendants during the course of the trial.  Starr also filed suit against the Commonwealth of Pennsylvania, Department of Transportation, (PennDOT) alleging that the intersection was improperly designed and maintained.  PennDOT joined the Township as an additional defendant, alleging that the Township was negligent in failing to install a sign prohibiting left turns from Sandy Hill Road onto Route 8.

Following trial, the jury awarded Starr $3,335,000.00, finding PennDOT 60% negligent and the Township 40% negligent.  The trial court molded the verdict to $250,000.00 against PennDOT and to $500,000.00 against the Township, to reflect their respective liabilities under statute.[2]  The trial court denied the Township's motion for judgment notwithstanding the verdict (n.o.v.) and granted, in part, Starr's motion for delay damages.

Traffic safety at the intersection had been a subject of concern for several years prior to the accident.  Responding to citizens' complaints, the Township contacted PennDOT in 1989 and in 1991, seeking to have a traffic signal installed and requesting PennDOT to conduct studies of the intersection.  In 1989, PennDOT performed a study and concluded that there was insufficient traffic volume to warrant the installation of a traffic signal.[3] PennDOT subsequently granted the Township's request to consolidate traffic volume counts at three intersections, but determined

---

1. The appeals were consolidated by order of this court dated March 21, 1997.

2. See Sections 8528 and 8553 of the Judicial Code, 42 Pa.C.S. §§ 8528 and 8553.

3. 67 Pa.Code § 201.61 sets forth the criteria PennDOT must consider to determine whether a traffic control signal is justified at an intersection.

that the volume remained insufficient to warrant a traffic signal.

In September of 1991, a PennDOT representative informed Township officials that other remedial measures, including but not limited to the installation of a "No Left Turn" sign, should be given consideration. The Township could not install a "No Left Turn" sign or other traffic restriction at this intersection without obtaining prior approval from PennDOT. 67 Pa.Code § 201.4. PennDOT did not perform any studies, nor did the Township request PennDOT to perform additional studies, to determine whether any alternative measures were warranted.

■ On appeal to this Court, the Township argues that it was entitled to the entry of judgment in its favor as a matter of law. Our scope of review of a trial court's denial of judgment n.o.v. is limited to determining whether the trial court abused its discretion or committed an error of law. *United States Fidelity & Guaranty Co. v. Royer Garden Center and Greenhouse Inc.*, 143 Pa.Cmwlth. 31, 598 A.2d 583 (1991), *petition for allowance of appeal denied*, 530 Pa. 663, 609 A.2d 170 (1992). We must view the record in a light most favorable to the verdict winner and grant him or her every inference. *Id.*

■ The Township maintains that it has no duty under common law or statute to erect a traffic control device on its highways. The Township further argues that because the accident did not occur on Township property, the facts do not fall within the "streets" exception to immunity provided by Section 8542(b)(6) of what is commonly called the Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8542(b)(6).

The Supreme Court rejected these arguments in *McCalla v. Mura*, 538 Pa. 527, 649 A.2d 646 (1994), a factually similar case in which the plaintiff argued that a governmental agency had a duty to require that its local

road allowed for safe entry onto a state highway. Extending its holding in *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), the Supreme Court in *McCalla* held that a governmental agency does have a duty to make its highways reasonably safe for their intended purpose.[4] The *McCalla* court stated that the failure to exercise that duty may create a dangerous condition exposing the agency to liability. Since the question of what constitutes a dangerous condition must be answered by a jury, the *McCalla* court reversed the grant of preliminary objections to the local agency.[5]

The Township argues that since *McCalla* is a plurality opinion, it lacks precedential value. We disagree. Pennsylvania courts have long held that the Sovereign Immunity Act and the Political Subdivision Tort Claims Act are to be interpreted consistently and it was inevitable that the courts would extend the holding in *Bendas* to governmental agencies. The concurring and dissenting opinion in *McCalla* agreed with the result, but expressed concern as to the breadth and scope of the majority opinion. Justice Flaherty feared that jurors "would be empowered to dictate significant alterations and additions to the infrastructure with no concomitant accountability for financing." *Id.* at 534, 649 A.2d at 650. Justice Flaherty opined that the outer limit of the duty of the Commonwealth agency or political subdivision should be the duty to erect a traffic control device. *Id.*

It is clear that a majority of the Court agreed that a governmental agency, like a Commonwealth agency, has a duty to maintain its roadways in a reasonable manner. *Id.* Moreover, a majority of the Court rejected the Township's argument, reflected in Justice Cappy's dissent, that this duty does not extend to providing safe access at an intersection. *Id.* Here, the jury determined that a dangerous condition existed at the

---

4. In *Bendas,* a decision interpreting the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521—8528, the Supreme Court held that Commonwealth agencies owe a duty of care to those using its real estate to require that the property is reasonably safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used.

5. *McCalla* was a plurality decision of the court. Justice Papadakos' majority opinion was joined by Justice Montemuro, sitting by designation. Justice Flaherty, now Chief Justice, authored a concurring and dissenting opinion in which Chief Justice Nix joined. Justice Cappy filed a dissenting opinion, joined by Justice Zappala. Justice Larsen did not participate in the decision.

intersection, based in part on the Township's failure to exercise its duty.

 Alternatively, the Township argues that *McCalla* is distinguishable from this case because here the Township was powerless to act without PennDOT's prior approval. However, it is undisputed that the Township never sought such approval.

 Finally, the Township argues that the verdict is against the weight of the evidence. The Township asserts that the evidence failed to establish that the sight distance at the intersection was inadequate or that a "No Left Turn" sign would have been permitted by PennDOT. These issues were among the many hotly contested questions of fact resolved by the jury. Questions of fact are within the sole purview of the jury and judgment n.o.v. may not be employed to invade the province of the factfinder. *Schneider v. Lindenmuth–Cline Agency, Inc.*, 423 Pa. Superior Ct. 73, 620 A.2d 505 (1993).

In her cross-appeal, Starr contends that the trial court erred in limiting the award of delay damages. Pursuant to Pa. R.C.P. No. 238, any period of delay caused by the plaintiff is excluded from the award of delay damages. Starr concedes that delay damages were tolled as of February 26, 1996, pursuant to a court order suspending delay damages until the case was "next called for trial," in order to allow Starr the opportunity to secure new counsel. Starr asserts that the damage calculations should resume as of May 10, 1996, when the case was next called for trial. PennDOT and the Township argue that the case was continued on that date and that the delay was solely due to the unavailability of one of Starr's witnesses.

The trial court conducted a hearing and resolved the disputed questions of fact in favor of the defendants. Having found that the delay of the case was solely attributable to Starr, the trial court properly limited delay damages under Pa. R.C.P. No. 238 to the time between the filing of the complaint and the court's February 26, 1996 order tolling delay damages. *Schrock v. Albert Einstein Medical Center*, 527 Pa. 191, 589 A.2d 1103 (1991).

Accordingly, the trial court's order is affirmed.

### ORDER

NOW, January 8, 1998, the order of the Court of Common Pleas of Allegheny County at No. GD 94–11399, dated January 29, 1997, denying the motion for post-trial relief and granting the motion for delay damages with modifications is affirmed.