IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alice Ward,                                          :
                              Appellant             :
                                                     :
                    v.                               :
                                                     :
Michael C. Potteiger, Individually; and   :
Michael W. Raith, Esquire,                   :
Individually; and Alicia Sweeney,          :   No. 1201 C.D. 2015
Individually                                       :   Argued: May 13, 2016


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION BY
JUDGE COVEY                                      FILED: June 9, 2016

Alice Ward (Ward) appeals from the Delaware County Common Pleas Court's (trial court) June 9, 2015 order sustaining preliminary objections filed by Michael C. Potteiger (Potteiger), Michael W. Raith (Raith) and Alicia Sweeney (Sweeney) (collectively, Appellees) to Ward's Sixth Amended Complaint. The sole issue before this Court is whether the trial court erred in sustaining the Appellees' preliminary objections and dismissing Ward's Sixth Amended Complaint.

According to the Sixth Amended Complaint, on January 3, 2012, while Ward was engaged in her job as a traffic controller on Providence Road in Edgemont Township, Delaware County, Pennsylvania, she was struck by a vehicle operated by Nicolas DeSimone (DeSimone). As a result of the accident, DeSimone was convicted of aggravated assault by vehicle while driving under the influence (DUI), aggravated assault by vehicle while driving under the influence of alcohol or controlled substance, and possession of a controlled substance, and is currently serving a prison term.

Ward also avers in the Sixth Amended Complaint that, at the time of the January 3, 2012 accident, DeSimone was a probationer under the supervision of the Delaware County Office of Adult Probation and Parole (DCOAPP). Hours preceding the accident, DeSimone had met with DCOAPP Officer Sweeney (Sweeney) as a condition of his parole. During the appointment, DeSimone admitted to Sweeney that he was under the influence of a controlled substance (*i.e.*, specifically, heroin) in violation of his probation conditions, and would fail a drug test. Sweeney did not subject DeSimone to a drug test and, after discussing DeSimone's condition with DCOAPP Director Raith, permitted DeSimone to drive home. The accident occurred after DeSimone left his DCOAPP appointment.

Ward suffered significant injuries and damages as a result of the accident. On January 3, 2014, Ward filed a Section 1983 action[1] and state law claims in the United States (U.S.) District Court for the Eastern District of Pennsylvania against the Commonwealth of Pennsylvania Board of Probation and Parole (Board), Potteiger individually and in his official capacity as the Board's then-chairman, Delaware County, DCOAPP, Raith individually and in his official capacity as DCOAPP director, and Sweeney individually and in her capacity as a DCOAPP probation officer. After Ward had filed her second amended complaint, by September 22, 2014 order, the U.S. District Court dismissed Ward's federal claims against the parties,[2] and declined to exercise jurisdiction over Ward's state claims against Potteiger, Raith, and Sweeney in their individual capacities.

---

[1] Section 1983 of the United States Code, 42 U.S.C. § 1983, authorizes civil actions for the deprivation of constitutional rights.

[2] On March 11, 2014, Ward filed an amended complaint. On April 1, 2014, she filed a second amended complaint. However, Ward's federal claims were dismissed because: (1) the U.S. Constitution's Eleventh Amendment immunity deprived the court of subject matter jurisdiction over the Board, the County, DCOAPP, and Appellees in their official capacities; and, (2) Ward failed to state a claim based upon a state-created danger.

On November 24, 2014, Ward's second amended complaint seeking damages against Appellees in their individual capacities was filed in the trial court. Potteiger, Raith and Sweeney filed preliminary objections in the nature of a demurrer on the basis that the action against them is barred by the act commonly referred to as the Pennsylvania Sovereign Immunity Act (Sovereign Immunity Act).[3] Between December 2014 and March 2015, Ward filed and Appellees preliminarily objected to three additional amended complaints on similar grounds.

On April 1, 2015, Ward filed the Sixth Amended Complaint at issue in this appeal. Therein, Ward included claims for:

Count I – Negligence/Gross Negligence/Willful Misconduct against Appellees

Count II – Constitutional Due Process Violations against Appellees

Count III – Punitive Damages against Appellees

---

[3] 42 Pa.C.S. §§ 8521-8528.

> [U]nder the Pennsylvania Rules of Civil Procedure, immunity from suit is an affirmative defense that must be pled in a responsive pleading under the heading new matter, not as a preliminary objection. We recognize that courts have permitted limited exception to this rule and have allowed parties to raise the affirmative defense of immunity as a preliminary objection. The affirmative defense, however, must be clearly applicable on the face of the complaint. Where the plaintiff does not object to the improper procedure, courts have ruled on the affirmative defense of immunity raised by preliminary objections.

*Smolsky v. Pa. Gen. Assembly*, 34 A.3d 316, 321 n.7 (Pa. Cmwlth. 2011) (citations omitted). Here, Ward did not object to Appellees' improper procedure.

Ward also references in her Sixth Amended Complaint and her brief the act commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541-42. However, the Tort Claims Act is applicable to local agencies and their employees. 42 Pa.C.S. § 8541. Because Ward's Sixth Amended Complaint makes claims against individuals acting in the scope and course of their Commonwealth employment, the Tort Claims Act is inapplicable. *See* footnote 8 *infra.*

Count IV – Vicarious Liability Involving Negligence/Gross Negligence/Willful Misconduct against Potteiger and Raith

Count V – Civil Conspiracy/Willful Misconduct against Raith and Sweeney

*See* Reproduced Record (R.R.) at 6a-25a.

Potteiger filed preliminary objections to the Sixth Amended Complaint on the bases that: (1) the trial court lacked jurisdiction over Ward's claims against him; (2) he is a high-ranking public official entitled to absolute immunity; (3) the Sovereign Immunity Act bars Ward's negligence and constitutional claims against him; (4) courts do not recognize money damages for constitutional violations; and, (5) he is not responsible for DCOAPP's actions or inactions. *See* R.R. at 34a-40a.

Raith and Sweeney similarly filed preliminary objections to the Sixth Amended Complaint.[4] Their first preliminary objection was a demurrer to Ward's negligence and willful misconduct claims due to the immunity they enjoy under the Sovereign Immunity Act (Count I) because there does not exist under these circumstances actionable claims for money damages for constitutional violations (Count II), punitive damages (Count III), and civil conspiracy (Count V); and, because third-party conduct cannot trigger vicarious liability (Count IV). Raith's and Sweeney's second preliminary objection was a demurrer to Count II on the basis that they are immune from Ward's constitutional claims. *See* R.R. at 26a-32a.

By June 9, 2015 order, the trial court sustained Appellees' preliminary objections and dismissed Ward's Sixth Amended Complaint with prejudice.[5] Ward appealed to this Court.[6]

---

[4] Raith and Sweeney incorporated by reference Potteiger's preliminary objections. *See* R.R. at 32a.

[5] The trial court filed its opinion in accordance with Pa.R.A.P. 1925(a) on September 9, 2015.

[6] "Our review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law." *Pub. Advocate v. Brunwasser*, 22 A.3d 261, 266 n.5 (Pa. Cmwlth. 2011).

4

> When considering preliminary objections, we must accept as true all well-pled facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, but not conclusions of law. Preliminary objections in the nature of a demurrer should be sustained only where the pleadings are clearly insufficient to establish a right to relief and any doubt must be resolved in favor of overruling the demurrer.

*Dadds v. Walters*, 924 A.2d 740, 742 (Pa. Cmwlth. 2007) (citation omitted).

Ward argues that the trial court erred by sustaining Appellees' preliminary objections where the Sixth Amended Complaint, as a whole and specifically at paragraphs 16, 22-27, 33, 39, 53-54, 61, 63, 82-83b, 96-99, "clearly and without doubt laid a sufficient factual foundation showing Appellees' liability . . . under the vehicle exception to immunity[.]"[7] Ward Br. at 9. Specifically, Ward contends that since the Sixth Amended Complaint avers that Appellees had physical and legal possession of DeSimone's car keys and, thus, control of his vehicle prior to the accident, the Sixth Amended Complaint states a sufficient cause of action for Appellees to be individually liable for Ward's damages under the vehicle exception to the Sovereign Immunity Act.

---

[7] Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b)(4)(vii) provides that "[i]ssues not included in the [Pa.R.A.P. 1925(b) Concise] Statement [of Errors Complained of on Appeal] . . . are waived." *Id.* In compliance with Pa.R.A.P. 1925(b)(3)(iii), the trial court's July 14, 2015 order directed Ward to file a Concise Statement of Errors Complained of on Appeal and therein warned that "[a]ny issue not properly included in the Statement . . . shall be waived." R.R. at 79a, *see* Pa.R.A.P. 1925(b)(3)(iv).

In Ward's Concise Statement of Errors Complained of on Appeal, the sole issue she proffered for this Court's review was whether the trial court erred by sustaining the preliminary objections in light of the vehicle and personal property exceptions under the Sovereign Immunity Act. *See* R.R. at 80a-81a. Therefore, we would be constrained to limit our review solely to those two issues. However, Ward does not address the personal property exception anywhere in her brief. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. Cmwlth. 2009). Since Ward fails to reference or develop a personal property exception argument on appeal, that issue is waived, and this Court's review is limited to whether Ward's Sixth Amended Complaint states viable individual causes of action against Potteiger, Raith and Sweeney under the vehicle exception to the Sovereign Immunity Act.

Initially,

> [t]he Pennsylvania Constitution provides that the Commonwealth and its officers and employees may only be sued where the General Assembly has authorized the suit. Pa. Const. art. 1 § 11. The General Assembly has specified that 'the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.' 1 Pa.C.S. § 2310.

*Russo v. Allegheny Cnty.*, 125 A.3d 113, 116 (Pa. Cmwlth. 2015).

Section 8522(a) of the Sovereign Immunity Act provides, in relevant part:

> **Liability imposed.--**The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in [S]ection 8528 [of the Sovereign Immunity Act] (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties,[8] for damages arising out of a

---

[8] A "Commonwealth party" is "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501. Section 102 of the Judicial Code defines "Commonwealth agency[]" as "[a]ny executive agency or independent agency." 42 Pa.C.S. § 102. Executive agencies consist of "the departments, **boards**, commissions, authorities **and other officers** and agencies **of the Commonwealth government**[.]" *Id.* (emphasis added).

Because the Board is an independent Commonwealth agency, by extension, Potteiger was a Commonwealth party employee entitled to immunity under the Sovereign Immunity Act for acts within the scope of his employment. *See* Section 7(a) of the Prisons and Parole Code, Act of August 11, 2009, P.L. 147, *as amended*, 61 P.S. § 6111(a); *see also Reiff v. City of Phila.*, 365 A.2d 1357 (Pa. Cmwlth. 1976) (the Sovereign Immunity Act insulates the Board from liability).

"Commonwealth government[]" is defined as "[t]he government of the Commonwealth, including the courts and other **officers** or agencies **of the unified judicial system**[.]" 42 Pa.C.S. § 102 (emphasis added). Article 5, Section 1 of the Pennsylvania Constitution vests the Commonwealth's judicial power "in a unified judicial system consisting of the . . . courts of common pleas . . . ." Pa. Const. art. 5, § 1. A county's adult probation and parole office is considered an arm of the trial court, rather than the prison system, and thus, the probation department operates under the common pleas court's authority. *See Commonwealth v. Druce*, 868

negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa.C.S. § 8522(a). Section 8522(b) of the Judicial Code contains the vehicle liability exception to sovereign immunity as follows:

> The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and **the defense of sovereign immunity shall not be raised to claims for damages caused by**:
>
> > **(1) Vehicle liability.--The operation of any motor vehicle in the possession or control of a Commonwealth party**. As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8522(b) (text emphasis added).[9] Because immunity remains the rule, we must narrowly construe the exceptions applicable under the Sovereign Immunity Act. *See Gale v. City of Phila.*, 86 A.3d 318 (Pa. Cmwlth. 2014); *see also Quinones v. Dep't of Transp.*, 45 A.3d 467 (Pa. Cmwlth. 2012).

In the instant case, Ward contends that paragraphs 16, 22-27, 33, 39, 53-54, 61, 63, 82-83b and 96-99 of the Sixth Amended Complaint provide the factual foundation for her vehicle liability claim against Appellees. Those averments state:

A.2d 1232 (Pa. Super. 2005); *see also Commonwealth v. Kelly*, 931 A.2d 694 (Pa. Super. 2007); *L.J.S. v. State Ethics Comm'n*, 744 A.2d 798 (Pa. Cmwlth. 2000) (a county's chief adult probation officer is a judicial officer); *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity."). Therefore, as DCOAPP director and employee, respectively, Raith and Sweeney are also employees of a Commonwealth party entitled to immunity under the Sovereign Immunity Act for acts within the scope of their employment.

[9] Relative to local agencies (*i.e.*, those other than Commonwealth agencies), Section 8541 of the Tort Claims Act similarly affords local agencies and their employees immunity if the damages sought are recoverable under common law or statute and were caused by negligent acts relating to "[t]he operation of any motor vehicle in the possession or control of the local agency[.]" 42 Pa.C.S. § 8542(b)(1).

7

16. After completing his shopping, DeSimone drove in his car to Media to meet with [] Sweeney at the [DCOAPP] . . . where DeSimone was in effect detained by [] Sweeney for purposes of his required probation visit which <u>included detention and/or physical and legal possession and control over the vehicle and keys</u> **DeSimone had operated** to get to this meeting and the same vehicle DeSimone would use to leave.

. . . .

22. <u>After knowing of DeSimone's admissions, . . . Sweeney and [] Raith discussed the content of DeSimone's admissions and then Sweeney and Raith together agreed that despite at this time having legal and physical possession and control of DeSimone's vehicle and keys, they would allow DeSimone to leave in the very vehicle he arrived in.</u>

23. <u>At this time . . . Sweeney and Raith . . . had physical and legal possession/control of DeSimone's vehicle and as such said vehicle was a Commonwealth vehicle and/or personal property.</u>

24. Despite these admissions by DeSimone while being detained during his probation visit, [] Sweeney affirmatively acted and permitted **DeSimone to operate** a motor vehicle despite the fact that Sweeney had <u>physical and legal control over the situation and had physical and legal control</u> over [DeSimone]'s vehicle and keys (DeSimone's personal property a/k/a vehicle).

25. Despite these admissions by DeSimone, [] Sweeney affirmatively acted and permitted **DeSimone**, who was detained for purpose[s] of the probation visit, to **leave and to operate** a motor vehicle <u>said vehicle and keys to said vehicle being completely under physical and legal possession and control</u> of [] Sweeney.

26. As a county probation officer, [] Sweeney was a peace officer and had authority throughout the Commonwealth of Pennsylvania to arrest, with or without writ, warrant, rule or process any person on probation for violation of the terms of the probation and also <u>despite already having physical and legal control of DeSimone's vehicle and keys, had authority to take further legal possession and control of</u>

8

DeSimone's vehicle by preventing the vehicle and keys from being passed back to DeSimone in light of DeSimone's admissions.

27. Despite DeSimone's admitted use of a controlled substance during a detained probation visit, [] Sweeney affirmative[ly] acted based on policy and customs, did not arrest or detain DeSimone, nor despite having complete physical and legal control of DeSimone's vehicle did Sweeney prevent DeSimone from taking what then would be considered County and/or a Commonwealth vehicle and/or personal property.

. . . .

33. **DeSimone drove his motor vehicle** past three (3) cautionary signs warning of work in the road and drove straight into [Ward].

. . . .

39. Prior to and during the time that DeSimone injured [Ward], DeSimone should have been arrested by [] Sweeney and should have been in custody and[/]or DeSimone's vehicle, which was in the control of [DCOAPP] and Sweeney, should have been retained and possesse[d] by Sweeney.

. . . .

53. . . . Sweeney did absolutely nothing to either detain DeSimone or to prevent him from operating a motor vehicle after leaving [DCOAPP].

54. All [Appellees] were required, obligated and/or duty-bound to properly supervise DeSimone in accordance with the terms and conditions of his probation.

. . . .

61. At the time that DeSimone admitted to . . . Sweeney that he had injected himself with heroin and that he had done so in the car that he drove to the [DCOAPP], . . . Sweeney should have detained DeSimone immediately in accordance with the terms of DeSimone's probation and in accordance with the obligations and/or duties of all [Appellees]. All

[Appellees] had the duty to arrest and had control over DeSi[]mone's vehicle at this time.

. . . .

63. . . . Sweeney's affirmative decision and act while DeSimone was being detained during a probation visit to actively permit DeSimone to leave when DeSimone admitted to his drug use and motor vehicle operation was in dereliction of the obligations and duties of all [Appellees] with respect to supervising the probation of DeSimone.

. . . .

83. . . . Ward's grievous and permanent physical/mental injuries, which vastly exceed any statutory monetary minimum, were caused by the following negligent, grossly negligent, reckless, willful disregard, wanton, outrageous and/or deliberately indifferent conduct of [Appellees] jointly and severally as follows:

. . . .

    b. <u>Although clearly having physical and legal control and physical and legal possession of DeSimone's vehicle and keys to the vehicle, knowingly allowing</u> **<u>DeSimone to leave and operate</u>** <u>Commonwealth/County vehicular and/or personal property</u>;

. . . .

97. . . . Ward's grievous and permanent physical/mental injuries, which vastly exceed any statutory monetary minimum, were caused by the following negligent, grossly negligent, reckless, willful disregard, wanton, outrageous and/or deliberately indifferent conduct of . . . Potteiger [and] Raith as to their supervisory and managerial oversight/control of [] Sweeney and [] Potteiger's supervisory/managerial oversight/control of [] Raith jointly and severally as follows:

    . . . .

    b. <u>Although clearly having physical and legal control and physical and legal possession of DeSimone's vehicle and keys to the vehicle,</u>

10

> knowingly allowing **DeSimone to leave and operate** Commonwealth/County vehicular and/or personal property;
>
> . . . .
>
> 99. . . . Ward's grievous and permanent physical/mental injuries, which vastly exceed any statutory monetary minimum, were caused in part AS AFORESAID, by the agreement of [] Sweeney and Raith, the conspirators, which consisted of inter alia, despite knowing of DeSimone's hellacious but truthful admissions of being high on illegal drugs (as well as being visibly and obviously intoxicated) and knowing that **DeSimone operated** a vehicle now in the legal and physical possession and control of [] Sweeney and Raith as a Commonwealth and/or County vehicle or personal property, agreeing to allow DeSimone to leave unscathed and to operate said Commonwealth/County vehicular and/or personal property which was the factual cause of [Ward]'s devastating and permanent injuries[.]

R.R. at 9a-24a (underline emphasis in original; bold emphasis added).[10]

Accepting as true the well-pled facts in the Sixth Amended Complaint, and all reasonable inferences deducible therefrom, as we must, it is clear that DeSimone physically operated the vehicle that struck and injured Ward on January 3, 2012. *Dadds*. Even assuming, *arguendo*, that Raith and Sweeney had control over DeSimone's car keys at some point prior to the accident, we must determine whether that is sufficient, as a matter of law, to subject Potteiger, Raith and/or Sweeney to liability for Ward's damages.

In order for the vehicle liability exception under the Sovereign Immunity Act to apply, the damages must have resulted from the "**operation of any motor vehicle in the possession or control of**" the Commonwealth party. 42 Pa.C.S. §

---

[10] Ward's Sixth Amended Complaint paragraphs 82, 96 and 98, incorporate by reference the previously-pled paragraphs.

8522(b) (emphasis added).[11]   In order to trigger the vehicle liability exception, Potteiger, Raith and/or Sweeney had to have **operated** the vehicle, **and** the vehicle had to be under their **control**.

The Sovereign Immunity Act does not expressly define either "operation" or "control."  However, in *Love v. City of Philadelphia,* 543 A.2d 531 (Pa. 1988)*,* our Supreme Court expressly held:

> **[T]o operate something means to actually put it in motion**.  Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle.

*Id.* at 533 (bold emphasis added); *see also Gale*; *Bottoms v. Se. Pa. Transp. Auth.*, 805 A.2d 47 (Pa. Cmwlth. 2002).  In addition, this Court has held that a stopped vehicle is not in operation for purposes of the vehicle liability immunity exception. *Knox v. Se. Pa. Transp. Auth.*, 81 A.3d 1016 (Pa. Cmwlth. 2013) (wherein a bus temporarily stopped to discharge passengers was not in operation); *see also Bottoms*.

Moreover, in *Gale*, Jose Garriya (Garriya) was handcuffed and placed into the back of a police cruiser owned by the City of Philadelphia (City).  Garriya was somehow able to commandeer the cruiser and eventually struck a car operated by Gale, causing Gale serious injuries and damages.  Gale sued the City, which asserted that it was immune from Gale's claims, and the trial court agreed.  Gale contended, as Ward does in the instant case, that the vehicle liability exception applied because both Garriya and the cruiser were in the City police officers' custody and control, and their actions were part of a continuous sequence of events that led to her injuries.  In affirming the trial court's order, this Court held:

---

[11] "Because the language in the vehicle exception to [the S]overeign [I]mmunity [Act] and to [the Tort Claims Act] is identical, the provisions are interpreted consistently, and cases that address one are applicable to the other." *Gale*, 86 A.3d at 321 n.4.

> The language of the statute and our cases make clear . . . that **where an employee of a local agency has not acted by putting a vehicle in motion[,] liability under the vehicle exception to governmental immunity will not attach**. From the face of [Gale]'s complaint, it is clear that . . . she is alleging that her injuries arose from the police officers' failure to prevent [] Garriya from operating the vehicle and not from their own operation of a vehicle.

*Id.* at 322 (emphasis added). Thus, even in a situation in which a government-owned vehicle caused the accident, and government employees' actions or inactions may have provided access to the vehicle, if the vehicle was not actually put in motion by the government employees, the vehicle liability exception to immunity is not applicable.[12]

Here, since DeSimone's vehicle was stopped at the time Raith and/or Sweeney purportedly possessed DeSimone's car keys, *see Knox*, and, as in *Gale*, Potteiger, Raith and Sweeney did not "actually put [DeSimone's vehicle] in motion[,]" we are constrained to hold that they did not operate DeSimone's vehicle as

---

[12] Ward relies upon *Mickle v. City of Philadelphia*, 707 A.2d 1124 (Pa. 1998). The *Mickle* Court addressed a slightly different aspect concerning the "operation" of a vehicle. In *Mickle*, a patient sued the City of Philadelphia (City), alleging that he was severely injured when the fire department rescue van into which he was placed lost its wheels while en route to the hospital. The trial court granted the patient's motion for summary judgment. The City appealed. This Court affirmed, and the City appealed to our Supreme Court which held that the City's negligent maintenance and repair of the fire department's rescue van was "the operation of a motor vehicle" within the meaning of the motor vehicle exception to governmental immunity. *Id.* at 1126. The *Mickle* Court stated:

> Negligence related to the **operation of a vehicle** encompasses not only how a person drives but also whether he should be driving a particular vehicle in the first place. The motor vehicle exception does not say that liability may be imposed only where the operator's manner of driving is negligent. Rather, it requires that the injury is caused by a negligent act with respect to the operation of a motor vehicle.

*Id.* (emphasis added). Hence, the *Mickle* Court concluded that the motor vehicle exception applied in that case. However, since the vehicle in the *Mickle* case was **operated by a City employee**, *Mickle* is inapposite here.

13

a matter of law, and the vehicle liability exception to immunity is not applicable.[13] *Love,* 543 A.2d at 533. Because Ward has failed to state a cause of action against Potteiger, Raith and/or Sweeney that would trigger their individual liability under the Sovereign Immunity Act, the trial court did not err by sustaining Appellees' preliminary objections and dismissing Ward's Sixth Amended Complaint with prejudice.

Accordingly, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[13] The vehicle liability exception in the immunity statutes require Potteiger's, Raith's and/or Sweeney's operation <u>and</u> control of DeSimone's vehicle, and it is clear on the face of the Sixth Amended Complaint that DeSimone was operating the vehicle at the time of the accident. Thus, we need not consider whether Potteiger, Raith and/or Sweeney ever had control, constructive or otherwise, of the vehicle.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alice Ward, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Michael C. Potteiger, Individually; and | : | |
| Michael W. Raith, Esquire, | : | |
| Individually; and Alicia Sweeney, | : | No. 1201 C.D. 2015 |
| Individually | : | |

# O R D E R

AND NOW, this 9th day of June, 2016, the Delaware County Common Pleas Court's June 9, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge