Christine Marie Novak, as     :
Administratrix of the Estate of    :
Charles John Nasta, deceased,    :
         Appellant   :
               :
               :
      v.        :
               :
William McLaughlin, Jr., Delicia   :
Nahman, City of Bethlehem, and   : No. 528 C.D. 2022
Moravian College       : Argued:  April 3, 2023

BEFORE: HONORABLE ANNE E. COVEY, Judge
     HONORABLE LORI A. DUMAS, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY          FILED:  April 26, 2023

    Christine Marie Novak (Novak), as Administratrix of the Estate of Charles John Nasta (Decedent), appeals from the Northampton County Common Pleas Court's (trial court) May 16, 2022 order granting the City of Bethlehem's (Bethlehem) Motion for Summary Judgment (Summary Judgment Motion), and October 15, 2018 order sustaining Moravian College's (Moravian) preliminary objections to Counts VII and VIII of Novak's Amended Complaint (Preliminary Objections).  Novak presents two issues for this Court's review: (1) whether the trial court erred as a matter of law by ruling that Novak failed to establish the necessary elements of a negligence claim against Bethlehem; and (2) whether the trial court erred by sustaining Moravian's Preliminary Objections when Moravian owed Decedent a duty of care.  After review, this Court affirms.

On July 12, 2018, Novak filed the Amended Complaint against William McLaughlin, Jr. (McLaughlin), Delicia Nahman (Nahman), Bethlehem, and Moravian (collectively, Defendants), asserting therein survival and wrongful death causes of action arising from a motor vehicle striking and killing Decedent, a pedestrian, as he was crossing Elizabeth Avenue at Iron Street (Intersection), following a Moravian soccer game in Bethlehem. On August 1, 2018, Moravian filed the Preliminary Objections to Novak's Amended Complaint, alleging therein that Novak's claim was legally insufficient because, under Pennsylvania law, a landowner owes no duty to pedestrians on adjoining public roadways. Specifically, Moravian asserted that it did not have a duty to control traffic or otherwise provide safe passage for pedestrians over a public road or highway such as Elizabeth Avenue. On October 15, 2018, the trial court sustained Moravian's Preliminary Objections.

On February 1, 2022, Bethlehem filed the Summary Judgment Motion. Therein, Bethlehem asserted that it is immune from Novak's claims under the portion of the Judicial Code commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act).[1] Specifically, Bethlehem averred that the traffic controls exception to the immunity provisions does not apply in the instant case because Bethlehem had no duty to erect traffic controls and did not create and/or have notice of a dangerous condition. On May 16, 2022, the trial court granted Bethlehem's Summary Judgment Motion, concluding that Novak failed to establish the necessary elements of a negligence claim against Bethlehem by failing to

---

[1] 42 Pa.C.S. §§ 8541-8542.

2

establish that Bethlehem owed a duty under the circumstances of this case or the proximate cause of the fatal collision.  Novak timely appealed to this Court.[2, 3]

> Initially,
>
> > [s]ummary judgment may be granted only in those cases where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. [Pa.] State Ethics Comm['n]*, . . . 723 A.2d 174, 176 ([Pa.] 1999).  On a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved in [her] favor. *Id.*  The question of whether [Bethlehem] is entitled to summary judgment is based purely upon the statutory construction of the applicable immunity provisions. *Dean v. [Pa.] Dep['t] of Transp*[.], . . . 751 A.2d 1130, 1132 ([Pa.] 2000).

*Texeira v. Commonwealth*, 284 A.3d 1279, 1283 n.3 (Pa. Cmwlth. 2022).

Novak first argues that the trial court committed an error of law and a manifest abuse of discretion by granting Bethlehem's Summary Judgment Motion. Specifically, Novak contends that Bethlehem had a duty to maintain its roadways free of dangerous conditions, including a duty to install an appropriate traffic control device to alleviate a known dangerous condition.  Novak asserts that the Intersection

---

[2]      The standard of review of the grant of summary judgment is *de novo*. *See e.g.*, *Pyeritz v. Commonwealth*, . . . 32 A.3d 687, 692 ([Pa.] 2011).  "The scope of review over an order granting summary judgment is "limited to a determination of whether the trial court abused its discretion or committed an error of law."

*Texeira v. Commonwealth*, 284 A.3d 1279, 1283 n.2 (Pa. Cmwlth. 2022) (quoting *Bowles v. Se. Pa. Transp. Auth.*, 581 A.2d 700, 702-03 (Pa. Cmwlth. 1990)).

"Our review of a trial court's order sustaining preliminary objections . . . is limited to determining whether the trial court abused its discretion or committed an error of law." *Ward v. Potteiger*, 142 A.3d 139, 142 n.6 (Pa. Cmwlth. 2016) (quoting *Pub. Advoc. v. Brunwasser*, 22 A.3d 261, 266 n.5 (Pa. Cmwlth. 2011)).

[3] On December 23, 2022, Nahman filed a Notice of Non-Participation.  On December 30, 2022, McLaughlin filed a Notice of Non-Participation.  It appears that those Defendants settled on May 13, 2021.

was a known dangerous condition and, while proximate cause is left to the jury to decide, it is clear from the record evidence that Bethlehem's failure to remedy the known dangerous condition was a proximate cause of Novak's damages.

Bethlehem rejoins that the trial court correctly concluded that Novak failed to meet her burden of proving that Bethlehem had a duty to install a traffic control device (be it a mid-block crosswalk or signage, or another purported remedial measure) at the Intersection. Bethlehem further retorts that the trial court also properly held that Novak failed to establish causation - a necessary element of her negligence claim. Bethlehem maintains that because Novak failed to produce competent evidence, she could not overcome the immunity the Tort Claims Act afforded Bethlehem.

Section 8542(b) of the Tort Claims Act provides, in relevant part:

> **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . . .
>
> (4) *Trees, traffic controls and street lighting.*--A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.
>
> . . . .
>
> (6) *Streets.*--
>
> (i) A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably

4

foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b).

The Pennsylvania Supreme Court has explained:

Under the Tort Claims Act, local government agencies such as [Bethlehem] are generally immune from tort liability, except in circumstances where immunity is expressly waived. *See* 42 Pa.C.S. § 8541. The General Assembly has waived immunity when two distinct conditions are satisfied: (1) the damages would be recoverable under statutory or common law against a person unprotected by governmental immunity, and (2) the negligent act of the political subdivision which caused the injury falls within one of the eight enumerated categories listed in Section 8542(b) of the Tort Claims Act, 42 Pa.C.S. § 8542(b). *See generally White v. Sch*[.] *Dist. of Phila.*, . . . 718 A.2d 778, 779 ([Pa.] 1998). **Our decision in this case turns upon the element of duty**.

*Starr v. Veneziano*, 747 A.2d 867, 871 (Pa. 2000) (emphasis added).

The *Starr* Court expounded:

[T]o establish a duty of care on the part of a municipality related to the installation of a traffic control device, a plaintiff must demonstrate that: 1) the municipality had actual or constructive notice of the dangerous condition that caused the plaintiff's injuries; 2) the pertinent device would have constituted an appropriate remedial measure; **and** 3) the municipality's authority was such that it can fairly be charged with the failure to install the device.

*Id*. at 873 (emphasis added).

Here, Novak asserts in her brief, *see* Novak Br. at 18,[4] and the trial court concluded, *see* Reproduced Record (R.R.) at 471a,[5] that the first element - whether Bethlehem had actual or constructive notice of the dangerous condition - was a question of fact for the jury.

> To satisfy the second requirement for establishing a duty to implement a traffic control measure, [Novak] was required to demonstrate that the relevant control would have constituted a proper and effective measure to mitigate the hazard at the [I]ntersection. This requirement arises naturally from the nature of the duty alleged, as it would be both illogical and contrary to public policy to deem a governmental entity obligated to install or erect a device which would be inappropriate to the location at issue.

*Starr*, 747 A.2d at 873.

> The *Starr* Court explicated:

> In this regard, it is important to note that, **under the Vehicle Code**, **the Commonwealth and its subdivisions may not erect traffic control devices unless it is first determined**, **based upon a traffic and engineering investigation**, **that a particular device is an appropriate means of regulating traffic**. *See* [Sections 6105, 6109(e), and 6122(b) of the Vehicle Code,] 75 Pa.C.S. §§ 6105 [(Department of Transportation (Department) to prescribe traffic and engineering investigations.)], 6109(e) [(Engineering and traffic investigation required.)], 6122(b) [(Standards for Department approval.)]; *see generally* . . . [Sections 212.5(b)(1)(iii) and 212.1 of the Department's Regulations, 67 Pa. Code §§ 212.5(b)(1)(iii) (Department's written approval required "before installing any new . . . traffic[ ]control device."), 212.1 (defines "[t]raffic[ ]control devices" as "[s]igns, signals, markings

---

[4] Novak asserted: "[T]here is sufficient evidence in the record **to put before the jury** the question of whether [] Bethlehem had actual notice of the dangerous condition of the Intersection." Novak Br. at 18 (emphasis added).

[5] The trial court stated that "both the question of what constitutes a 'dangerous condition,' and whether a local agency had either actual or constructive notice of a dangerous condition, would be questions of fact for a jury to decide." R.R. at 471a.

6

and devices consistent with this chapter[]")]. These statutes and regulations reflect the concern that some devices may have undesirable effects upon the larger system of traffic regulation and control that preclude their use in certain locations. Because the determination of appropriateness entails consideration of principles and methods of traffic engineering that are beyond the scope of a layman's training, expert opinion expressed within a reasonable degree of engineering certainty is generally required for the plaintiff to meet this requirement.

*Id*. (emphasis added); *see also Bender v. Dep't of Transp.* (Pa. Cmwlth. No. 77 C.D. 2019, filed June 30, 2020).[6]

In the instant mater, Novak's expert, Richard M. Balgowan, PE, PP, CPM, CPWM, PWLF (Balgowan), provided in his report, in relevant part:

Within the bounds of reasonable engineering certainty, and subject to change if additional information becomes available, it is my professional opinion that:

. . . .

3) If a mid-block crosswalk is properly designed based on effective safety engineering checks and studies, then **these crossings can potentially decrease the risk of pedestrians crossing between intersections**. Mid-block crosswalks make it more convenient for people to reach their destination by eliminating extra walking to a street corner.

. . . .

5) Had a safe pedestrian crossing been in place at the time that [Decedent] attempted to cross the [Intersection] or had . . . Bethlehem taken positive actions to protect pedestrians at this [I]ntersection, the [] incident would not have occurred and [Decedent] would not have been fatality injured.

---

[6] Unreported decisions of this Court, while not binding, may be cited for their persuasive value. Section 414(a) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.414(a). *Bender* is cited herein for its persuasive value.

7

6) Based on the evidence[,] the proximate cause of the collision was the failure of McLaughlin to recognize in time and yield the right-of-way to the pedestrian ([Decedent]) crossing within the unmarked crosswalk at Iron Street.

7) Within a reasonable degree of engineering certainty, 1) the conditions that then existed to cross [the Intersection] were inheritably dangerous and misleading for pedestrians attempting to cross Elizabeth Avenue; and 2) **had there been a marked crosswalk and other safety elements alerting McLaughlin of the presence that pedestrians were present and in the process of crossing**, **this collision would have been avoided**.

8) Within a reasonable degree of engineering certainty, in failing to erect any measures whatsoever prior to October 5, 2016[,] to guard or warn pedestrians crossing, . . . Bethlehem breached [its] duty to protect pedestrians and motorists of the roadway. Bethlehem would have not breached [its] duty to the public, even if [it] had merely warned pedestrians by placing a "NO PEDESTRIAN" warning sign, 'Use Crosswalk' supplemental plaque, or 'CROSS ONLY AT CROSSWALKS' indicating the dangers of crossing at this specific unmarked crosswalk and indicating the direction of the safe crossing.

R.R. at 382a-383a (emphasis added). Balgowan's expert report does not offer an opinion on the feasibility or appropriateness of installing a crosswalk at the Intersection.

[A]lthough [Balgowan] [opin]ed generally that a [traffic control device] would have prevented the accident involving [Decedent], he failed to offer even a conclusory opinion on the larger issue of whether a [mid-block crosswalk] was appropriate to this [I]ntersection. Specifically, no expert opinion evidence was offered to establish the feasibility of a [mid-block crosswalk], or that the net effect of a [mid-block crosswalk] upon the larger system of traffic control in the vicinity of the [I]ntersection would have been beneficial.

8

*Starr*, 747 A.2d at 873-74. This evidence is especially warranted here, where there are other conditions in the vicinity to consider, including the lack of sidewalks, the proximity of other marked crosswalks, and whether a crosswalk in that location would be safe in light of limited sight distance caused by the street slope.

> Further, as aptly noted by the trial court:
>
> > [Balgowan] asserts that "mid-block crosswalks" require submission to [the Department] and approval by the [s]tate [t]raffic [e]ngineer. *See* [R.R. at 873a]. *Starr* further provides: "a plaintiff seeking to establish authority on the part of a municipality to erect or install a traffic control device will necessarily be required to prove that, more likely than not, [the Department's] approval would have been forthcoming." *Starr*[, 747 A.2d] at 874. Here, [Balgowan's] expert report does not provide any opinion on whether [the Department] or the [s]tate [t]raffic [e]ngineer would be likely to approve such a mid-block crosswalk at this location. In cases "where [Department] approval is a pre-requisite to municipal action, a plaintiff[']s expert must support his or her opinion as to appropriateness with an analysis of the same facts that [the Department] would consider when its approval is sought." *Wenger v. W*[.] *Pennsb*[*o*]*ro* [*Twp.*], 868 A.2d 638, 643 (Pa. Cmwlth. 2005). Although [Balgowan's] expert report identifies the relevant factors, he does not undertake any analysis of those factors or reach any conclusions on the application of the factors to the circumstances of the location at issue.

Trial Ct. Op. at 5 n.3; R.R. at 472a. Without a sufficient expert report, Novak cannot establish that Bethlehem had a duty to remedy the alleged dangerous condition on Elizabeth Avenue.

Nevertheless, Novak maintains that Balgowan's expert report was sufficient to prove that Bethlehem owed a duty to install a crosswalk pursuant to *Wenger*, because the *Wenger* Court held "that the holding in *Starr* does *not* require a plaintiff's expert to undertake and/or document an engineering and traffic investigation in accordance with any particular [Department] [R]egulation."

9

*Wenger*, 868 A.2d at 643. However, the *Wenger* Court continued: "Of course, in circumstances where [Department] approval is a prerequisite to municipal action, a plaintiff's expert must support his or her opinion as to appropriateness with an analysis of the same facts that [the Department] would consider when its approval is sought." *Id*. It is undisputed that Department approval is required herein; however, in *Wenger*, it was not. Accordingly, *Wenger* is inapposite.

Regarding causation, the trial court opined:

[T]o the extent that [Novak] argues that [Bethlehem] could have installed speed limit signage or speed bumps on [Bethlehem] streets without undertaking [Department] approval, [the trial court] note[s] that there is no evidence of record that the driver, McLaughlin, who struck Decedent, was exceeding the posted speed limit of 25 miles per hour at the time. *See* . . . Summary Judgment [Motion] at Exhibit D, [D]eposition of [] McLaughlin, at page 14, and police crash reports appended thereto. Similarly, [Novak] also argues that [Bethlehem] could have installed signage warning pedestrians not to cross Elizabeth Avenue at Iron Street. [Balgowan] opines that such signage would have discharged [Bethlehem's] duty, however, he also opined that "most people are not going to walk 750 feet to cross the street." [R.R. at 383a.] Consequently, [Novak] has not demonstrated that additional signage would have mitigated the hazard of Decedent crossing the street at that [Intersection]. More specifically, even if [Bethlehem] could be considered to have had a duty to erect additional signage, [Novak] has not established that the failure to do so was the proximate cause of the fatal collision.

R.R. at 473a-474a. This Court discerns no error in the trial court's reasoning.

Balgowan's expert report does not contain sufficient evidence to prove that Bethlehem had a duty to erect a traffic control device. Even if Bethlehem had a duty to erect signage, Balgowan's expert report was insufficient to prove that lack of such signage was the proximate cause of Decedent's accident. In the absence of such duty, Novak cannot prove Bethlehem's requisite negligence to overcome

Bethlehem's immunity from suit afforded by the Tort Claims Act. Accordingly, because "the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law[,]" the trial court properly granted Bethlehem's Summary Judgment Motion. *Texeira*, 284 A.3d at 1283 n.3.

Novak next argues that the trial court erred by sustaining Moravian's Preliminary Objections when Moravian owed Decedent a duty of care. Specifically, Novak contends that case law makes clear that a landowner can assume a duty based on its prior conduct. Further, Novak asserts that the record evidence reveals that the parking lot location in relationship to the campus is dangerous in light of the known risk of harm created by pedestrians crossing the Intersection to get to and from areas on the college campus. Thus, Novak proclaims that Moravian owed its invited guests, including Decedent, a duty to exercise reasonable care to make the crossing safe. Moravian rejoins that *Newell v. Montana West, Inc.*, 154 A.3d 819 (Pa. Super. 2017), when applied correctly to the present circumstances, supports the trial court's ruling that Moravian owed no duty to Decedent.

Initially,

> [w]hen considering preliminary objections, we must accept as true all well-pled facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, but not conclusions of law. Preliminary objections in the nature of a demurrer should be sustained only where the pleadings are clearly insufficient to establish a right to relief and any doubt must be resolved in favor of overruling the demurrer.

*Ward v. Potteiger*, 142 A.3d 139, 143 (Pa. Cmwlth. 2016) (quoting *Dadds v. Walters*, 924 A.2d 740, 742 (Pa. Cmwlth. 2007) (citation omitted)).

11

Section 349 of the [Restatement (Second) of Torts (]Second Restatement[)] . . . provides:

**Dangerous Conditions in Public Highway or Private Right of Way**

A possessor of land over which there is a public highway or private right of way is not subject to liability for physical harm caused to travelers upon the highway or persons lawfully using the way by his failure to exercise reasonable care[:]

(a) to maintain the highway or way in safe condition for their use, or

(b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover.

*Newell*, 154 A.3d at 824 (footnote omitted) (quoting *Allen v. Mellinger*, 625 A.2d 1326, 1328 (Pa. Cmwlth. 1993)).

A pedestrian who walks on a public highway places himself at risk of injury from vehicles traveling on the highway. Any duty of care owed to that pedestrian must belong to those who maintain the road and those motorists who are licensed to drive safely on it. The duty does not extend to landowners who have premises adjacent to the roadway.

*Id*. at 826.

[Novak] must prove a duty of care on the part of [Moravian], and a breach thereof causing [Decedent's] injuries. [Novak] has failed to do this. [Moravian] [is] not liable to [Novak] because, by her own admission, [Decedent] [was killed in the Intersection] located off [Moravian's] property. As Section 349 of the [Second] Restatement makes clear, [Moravian], as [an] abutting landowner[], owed no duty to [Decedent], which could be breached, to maintain a public highway in a safe condition.

*Id*. at 824 (quoting *Allen*, 625 A.2d at 1329).

The trial court explained:

> Under Pennsylvania law, to hold a defendant liable for negligence, the plaintiff must prove: (1) a legally recognized duty to which the defendant must conform; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff. *Truax v. Roulhac*, 126 A.3d 991, 997 (Pa. Super. 2015). Here, [Novak] has failed to establish the first element of her [negligence] cause of action. . . . [A] Pennsylvania landowner owes no duty to an invitee injured on an adjoining roadway. *Newell* . . . . The facts of the instant case are consistent with those of *Newell* in that [] Decedent was struck and killed while crossing the roadway adjacent to the property owned by [Moravian]. [Novak] has not asserted any factual allegations to distinguish the instant case from the facts in *Newell*, or to demonstrate that [Moravian] voluntarily assumed the duty of ensuring the safe passage of the Decedent.

R.R. at 104a. This Court discerns no error in the trial court's reasoning.

Notwithstanding, Novak argues that, under *Laconis v. Burlington County Bridge Commission*, 583 A.2d 1218 (Pa. Super. 1990), a defendant can assume a duty to warn of a danger existing on an adjacent property where the defendant had provided such warnings in the past. Novak asserts that she could have obtained evidence that Moravian had provided such warnings in the past, if she had been given the opportunity to proceed with discovery. However, in *Laconis*, it was the Burlington County Bridge Commission's (Commission) assumption of responsibility to repair the area below the bridge **and** to warn of the dangerous condition that resulted in a finding of liability. The *Laconis* Court held:

> The Commission not only knew about the dangerous drainage problem, but it had assumed responsibility to correct it. In June[] 1979, **it unsuccessfully attempted to repair the highway**. In addition, **it sent bridge police to the area when heavy rain fell in order to warn motorists to slow down prior to reaching the accumulation of water**. Despite the fact that it both had

13

failed to repair the problem and that it also monitored the situation by warning motorists to slow down after a heavy rainfall, the Commission did not warn motorists the night the accident occurred. The trial court determined that heavy rain had been falling the entire evening prior to the accident. [The Pennsylvania Superior Court] affirm[ed] the trial court's assessment of liability against the Commission **based on its negligent failure to perform the duty which it had undertaken to perform**.

*Id.* at 1221 (emphasis added). The decedent in *Laconis* had no choice but to drive over the dangerous condition after exiting the Commission-operated bridge. Thus, the Commission attempted to repair, and warn motorists of, the adjoining admittedly dangerous condition.

Novak contends that similarly, here, since the parking lot was on the other side of the Intersection from where the soccer game was held, Moravian had a duty to warn Decedent of the alleged dangerous condition. However, Decedent did not have to cross at that location, and no amount of discovery would lead to a finding of an assumption of a duty that Moravian clearly did not have. The sad fact is, it was Decedent's crossing of Elizabeth Avenue, at night, in traffic, in a space where pedestrians were not invited, that proved fatal for him, not the fact that he had to cross Elizabeth Avenue to reach his vehicle. As the record evidence reveals, and Novak does not dispute, a crosswalk was available for Decedent to use a mere one block east of Iron Street. Accordingly, because "the pleadings are clearly insufficient to establish a right to relief[,]" the trial court properly sustained the Preliminary Objections when Moravian did not owe Decedent a duty of care. *Ward*, 142 A.3d at 143 (quoting *Dadds*, 924 A.2d at 742).

For all of the above reasons, the trial court's orders are affirmed.

_____
ANNE E. COVEY, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christine Marie Novak, as       :
Administratrix of the Estate of     :
Charles John Nasta, deceased,    :
                   Appellant      :
                           :
              v.           :
                           :
William McLaughlin, Jr., Delicia   :
Nahman, City of Bethlehem, and   :    No. 528 C.D. 2022
Moravian College               :

# O R D E R

AND NOW, this 26th day of April, 2023, the Northampton County Common Pleas Court's May 16, 2022 and October 15, 2018 orders are affirmed.

_____
ANNE E. COVEY, Judge